IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| PABLO SANTANA ARELLANO, | |
| Petitioner, | |
| v. | Civil Case 2:25-CV-049-Z<br>(Criminal Case 2:21-CR-088-Z-BR-1) |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. Section 2255 (the "Motion") filed by Petitioner Pablo Santana Arellano ("Arellano"). ECF No. 2. Having considered the Motion, the response and reply thereto, the record, and applicable authorities, the Court hereby **DENIES** the Motion for the reasons stated below.

**BACKGROUND**

The record in Arellano's underlying criminal case, No. 2:21-CR-088-Z-BR (the "CR"), reflects the following:

On October 13, 2021, Arellano was named in a two-count indictment charging him in Count One with conspiracy to distribute and possession with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. Section 846, and in Count Two with possession with intent to distribute fentanyl in violation of 21 U.S.C. Sections (a)(1) and 841(b)(1)(A)(C). CR ECF No. 23. On October 20, 2022, after a three-day jury trial, Arellano was found guilty on both counts. CR ECF No. 142.

The probation officer then prepared a presentence report ("PSR"), which reflected that Arellano's total offense level was 34. CR ECF No. 152-1 ¶ 34. His sentencing guideline range was 168-210 months. *Id.* ¶ 96. At sentencing, the Court varied upward from the guideline

range, sentencing Arellano to 240 months of imprisonment on each count, to run concurrently, followed by five years of supervised release. CR ECF No. 168. Arellano filed a direct appeal, and the judgment of the Court was affirmed on March 18, 2024. CR ECF No. 193. Arellano then filed a petition for writ of certiorari with the U.S. Supreme Court, which was denied on October 7, 2024. *See Arellano v. United States*, 145 S. Ct. 249 (2024). He timely filed this Motion on February 18, 2025. CR ECF No. 198 at 12.

Arellano asserts the following grounds in support of the Motion:

(1) Counsel was ineffective during "plea negotiations" (*i.e.*, the pretrial phase) on a variety of grounds;

(2) Witnesses tampered with evidence used at trial;

(3) The prosecution failed to disclose exculpatory evidence; and

(4) The prosecution failed to correct perjured testimony.

The government filed a response, disputing Arellano's claims. ECF No. 7. Arellano filed a reply on May 5, 2025. ECF No. 8.

**STANDARD OF REVIEW**

**I. Section 2255**

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164-165 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. *Id.* at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final

judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Hughes*, 635 F.2d at 451. A prisoner is not entitled to an evidentiary hearing unless he or she "presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). The Court has reviewed the record and concluded that an evidentiary hearing is not necessary because the record categorically refutes Arellano's claims, as set forth below.

### II. Ineffective assistance of counsel

To prevail on an ineffective assistance of counsel claim, the movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining

3

the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel.").

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the movant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

ANALYSIS

Arellano argues in his Reply Brief that he is entitled to relief because the government failed to disprove each of his claims in its response to the Motion. Contrary to the position taken by Arellano, however, the burden is not on the government to provide evidence to disprove his allegations. *See Premo v. Moore*, 562 U.S. 115, 121–22 (2011). The Court will evaluate each of Arellano's allegations in turn under the proper burden of proof, as set forth above.

**I. Ineffective Assistance of Counsel**

*A. Failure to Advise About Decision to Proceed to Trial*

Arellano provides a litany of conclusory complaints about his counsel's conduct as

4

related to Arellano's decision to proceed to trial rather than enter a guilty plea. Specifically, he alleges that trial counsel was ineffective because counsel "failed to apprise Petitioner with vital case information, failed to adequately consult with petitioner, and waived Petitioner's exclusive right to decide to plead guilty or opt to trial." ECF No. 2 at 4. Arellano further alleges that counsel misled or deceived him and that, had counsel not done so, Arellano would have "accepted the government's plea offer or sought the most favorable avenue an[d] not proceeded to trial." *Id.* Lastly, he alleges that counsel failed to adequately counsel him "regarding the situation" and did not explain to him the difference between the purported plea offers and trial. *Id.*

Arellano does not state the misleading advice that he allegedly received or provide evidence of any plea offer he received. He also fails to specify the "vital case information" that counsel allegedly withheld from him. Instead, Arellano simply claims in his Reply Brief that the government cannot show that he was advised "adequately" and that "the record" reflects several plea agreements; however, he fails to cite to any plea offers in the record. ECF No. 8 at 3. Although *pro se* filings are liberally construed, the Court is not required to guess or to develop the arguments on the movant's behalf. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (ruling that *pro se* litigants are still required to provide sufficient facts in support of their claims). In addition, as noted above, the Court declines to alter the well-established burden of proof that Arellano must show his entitlement to relief under Section 2255.

Arellano's claims are conclusory and do not support relief. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Likewise, "[o]ne claiming ineffective assistance of counsel must

5

identify specific acts or omissions; general statements and conclusionary charges will not suffice. The particular professional failure must be pled and proven." *Knighton v. Maggio*, 740 F.2d 1344, 1349 (5th Cir. 1984); *see also Miller*, 200 F.3d at 282 ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Arellano has not shown that his counsel was ineffective on these grounds.

### B. Failure to Investigate and Interview Witnesses

Arellano next alleges that his trial counsel was ineffective for failing to conduct a thorough pretrial investigation. Specifically, he claims that counsel failed to investigate the ownership of the vehicle he was driving when he was arrested, as well as the name on certain airplane tickets. ECF No. 2 at 15.

Defense counsel must engage in a reasonable amount of pretrial investigation and "at a minimum, . . . make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). There are no strict rules for counsel's conduct, however, beyond the general requirement of reasonableness. *See Trottie v. Stephens*, 420 F.3d 231, 242 (5th Cir. 2013).

Arellano contends that investigation into ownership of the car would show that Arellano did not own the car, and it was not registered in his name. This, he contends, would contradict evidence supplied by DEA officer Jose Barron ("Barron"), who testified that Arellano, rather than Arellano's co-defendant Bridgette Star Gardeazabel ("Gardeazabel"), owned the vehicle. ECF No. 8 at 4. Arellano further claims that counsel failed to investigate the name on certain airplane tickets, which allegedly would show that Barron falsely testified that the name on the tickets was "Jessica Jannell Gardeazabel" rather than Gardeazabel. *Id.* Arellano fails to show, however, how such information would have led to acquittal. "A

6

defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Talamini*, 2013 WL 1197926 at *3 (N.D. Tex. 2013) (unpublished) ("Movant does not identify any further information that counsel could have uncovered that would have favorably changed the outcome of his case."). Arellano does not allege what, if anything, the investigation would have discovered that would have changed the outcome of his case. His claims on this issue are meritless.

### C. Failure to File Pretrial Motions

Arellano complains that counsel failed to take various actions in preparing for trial, including filing a motion to suppress evidence from a purportedly illegal search of his iPhone and failing to subpoena an unspecified witness on his behalf. ECF No. 2 at 16; ECF No. 8 at 5. He further alleges that counsel was ineffective for failing to allege that investigators violated his Fourth Amendment rights by illegally accessing the information on his phone without a warrant. ECF No. 8 at 5. Lastly, Arellano complains that counsel entered into an agreement with the government without his consent, whereby they agreed to not introduce phone records that purportedly benefitted Arellano. *Id.* Such claims do not show a constitutional violation.

On habeas review, federal courts do not second-guess an attorney's decisions through the "distorting effects of hindsight," but rather, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. A movant cannot succeed on an ineffective assistance of counsel claim by making conclusory allegations that counsel failed to file motions, make objections, or to follow instructions. *See United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007). "The

7

filing of pretrial motions falls squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). Further, "[c]ounsel is not required to engage in the filing of futile motions." *Id.* Arellano has provided no evidence that counsel's decision to not file these motions was anything other than trial strategy.

In short, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Arellano's allegations do not indicate the existence of "obvious unfairness." He fails to allege what evidence, if any, counsel would have obtained in response to the motions that would have affected his trial. *See Medrano v. United States*, No. 3:08-CV02250-N, 2009 WL 1181070 at 2 (N.D. Tex. May 1, 2009) (denying motion where movant "lists numerous types of pre-trial motions that trial counsel could have filed, [but] fails to provide any details whatsoever as to the applicability of any of the mentioned motions"). Arellano has not shown that his counsel was ineffective by simply not filing the pretrial motions that Arellano now claims were necessary.

Similarly, Arellano has not shown that the agreement between counsel and the government regarding use of his phone records prejudiced him. They agreed that the phone records would not be used, and they were not used. CR ECF No. 99. Because they were not used, counsel was not ineffective for failing to file a motion to suppress. To the extent Arellano complains that at least some of the records were helpful to him and should have been used, he fails to show what records should have been used, how they should have been used, and how they would have affected the jury's verdict. Arellano's claims on this issue fail.

*D. Failure to File Speedy Trial Motion and Object to Trial Continuances*

Arellano states that counsel was ineffective for failing to file a motion for a speedy

trial. He states that such failure, combined with counsel's failure to object to the government's motions for continuance, allowed the government sufficient time to have "the star witness" (presumably Gardeazabel) apprehended in time to testify at his trial, thereby prejudicing him. ECF No. 8 at 6. In short, Arellano does not appear to argue that his right to a speedy trial was violated; instead, he argues that his counsel failed to rush the government to trial before Gardeazabel could be found to testify against him. *Id.*

Contrary to Arellano's assertions, his counsel did, in fact, object to the continuances sought by the government and granted by the Court. In response to the government's first motion for continuance, counsel's response stated that "Mr. Arellano is adamantly opposed to counsel either seeking or agreeing to any type of continuance in this case. Defendant wishes to assert his Speedy Trial rights." CR ECF No. 35 at 1. Counsel also opposed a number of the government's motions to continue but agreed to (and sought) others when more time was needed to develop Arellano's defense. *See* CR ECF Nos. 34, 37, 45, 62, 78. Ultimately, the Court determined that each continuance granted was necessary for the "ends of justice." *See* CR Nos. 32, 36, 39, 46, 63, 88.

The fact that counsel's challenges to the continuances were unsuccessful does not render counsel ineffective. *See, e.g., Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief."); *see also Jones v. United States*, No. 3:19-cv-01461-D-BT, 2021 WL 5017342 (N.D. Tex. 2021) ("Habeas relief is not warranted where, as here, counsel tried but was not successful in his efforts to persuade the court."). Trial counsel clearly objected to the continuances, but such objections were overruled.

Further, counsel's failure to file a separate motion to invoke his Speedy Trial Act rights fails to implicate the type of prejudice that the Speedy Trial Act was designed to

9

prevent. The Supreme Court has explained:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker v. Wingo*, 407 U.S. 514, 532 (1972) (quoted in *United States v. Blank*, 701 F.3d 1084, 1089 (5th Cir. 2012)). Arellano fails to show a violation of his speedy trial right that implicates one of the types of prejudice that the Speedy Trial Act was intended to prevent. Accordingly, Arellano is not entitled to relief on this basis.

### E. Failure to Adequately Cross-Examine Witnesses

Arellano next alleges that counsel failed to impeach a DEA agent (presumably Barron) with prior inconsistent statements. ECF No. 2 at 16. Whether and how to cross-examine a particular witness is a question of trial strategy that enjoys a strong presumption of effectiveness. *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1100 (2012). Arellano fails to show that counsel's cross-examination of Barron was deficient. In addition, Arellano fails to show that "a different cross-examination would have created a reasonable probability of a different outcome." *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir.), *cert. denied*, 580 U.S. 833 (2016). Speculation concerning the possible effect of using a different cross-examination technique or impeachment strategy is the type of hindsight about which *Strickland* cautions. *See Strickland*, 466 U.S. at 689. Arellano has neither shown that counsel was deficient nor that he was prejudiced by counsel's alleged failures to cross-examine in the manner now sought by Arellano. This claim is without merit.

### F. Failure to Object to PSR and Make Effective Arguments at Sentencing.

Arellano alleges that counsel failed to "prepare for [the] sentencing hearing to rebut

10

sentencing arguments," failed to object to mistakes in the PSR regarding Gardeazabel's "identification" and failed to argue for "advanced notice" under Fed. R. Crim. Pro. Rule 32(h) that the government intended to seek an upward variance on his sentencing guideline range. ECF No. 2 at 16. He also alleges that counsel was ineffective for failing to object to the Court's upward variance based upon drug potency. ECF No. 2 at 16.

Arellano fails to detail the arguments that he contends counsel should have been made, nor did he specify any mistakes in the PSR to which he believes counsel should have objected.[1] As noted above, "conclusory allegations" of deficient performance and prejudice do not satisfy the *Strickland* test. *Miller*, 200 F.3d at 282. Further, the Court imposed an upward variance, not a departure, so no notice was required. CR ECF No. 185 at 4-5. *United States v. Redmond*, 395 F. App'x 115, 116 (5th Cir. 2010) (citing *Irizarry v. United States*, 553 U.S. 708 (2008) (explaining that, contrary to when it is contemplating imposing an upward departure, "[a] district court is not required to provide advance notice before applying an upward variance")). Thus, any objection made by counsel at sentencing to the lack of notice would have been meritless. *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Arellano's argument that counsel was ineffective for failing to object to the Court's upward variance based on the potency of fentanyl also is unavailing. The Court imposed an

---

[1] In his Reply Brief, Arellano simply reiterates his conclusory statement that there were mistakes in the PSR, and argues that the government failed to prove that the PSR is accurate. As previously noted, it is Arellano's burden to provide evidence of any mistakes upon which he bases his claims for relief.

upward variance for several reasons. First, the Court determined that the seriousness of Arellano's criminal history was not adequately reflected in his criminal history category. CR ECF No. 185 at 9-10. Second, the Court varied upward due to the fact that the drug transported by Arellano was fentanyl, which the Court noted is "approximately 30 times more potent than heroin and approximately 60 times more potent than morphine, resulting in increased potential for fatalities, particularly when the user is unaware they are using fentanyl." *Id.* at 10. Lastly, the Court found that an upward variance was necessary to promote respect for the law. *Id.* at 10-11. Arellano's counsel did, in fact, lodge numerous objections to the Court's tentative determination that an upward variance was warranted, including an objection on the drug potency issue, but the Court overruled the objections.[2] *See id.* at 11-14. As stated above, the fact that counsel's objections were unsuccessful does not render counsel ineffective. *See Youngblood*, 696 F.2d at 410.

## II. Prosecutorial Misconduct

Arellano's prosecutorial misconduct claims are procedurally barred due to his failure to raise them on direct appeal. *See United States v. Arellano*, Case No. 23-10199 (5th Cir. Mar. 18, 2024); CR ECF No. 192. "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). In the Motion, Arellano does not explain the reasons he did not raise these claims on direct appeal, thus failing to show cause and prejudice. As a result, his claims are procedurally barred. Even if they were not, however, he fails to show that his

---

[2]Contrary to Arellano's assertions, the Court did not vary upward due to any belief that the fentanyl trafficked by Arellano was more potent than any other fentanyl.

claims of prosecutorial misconduct have merit. Therefore, to the extent Arellano claims that counsel was ineffective for raising these issues on appeal, such claim fails because they are meritless, as shown below, and clearly not stronger than the claims counsel did raise. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000).

### A. Failure to Provide Brady Material

Arellano alleges that the prosecution failed to disclose exculpatory evidence to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, he claims that the prosecution wrongfully withheld Gardeazabel's criminal background records, evidence extracted from Gardeazabel's phone, Gardeazabel's "medical and mental records," Gardeazabel's "family court records" and evidence of Gardeazabel resisting arrest and assaulting a U.S. marshal. ECF No. 2 at 14-15; ECF No. 8 at 8-9.

A *Brady* violation has three components: (1) evidence favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution, and (3) the evidence was material. *Reeder v. Vannoy*, 978 F.3d 272, 277 (5th Cir. 2020); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). As to the third element, "[s]uppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Reeder*, 978 F.3d at 277 (quoting *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018)). "Different" means that "the suppressed evidence undermines confidence in the outcome of the trial." *Id.* (internal quotation marks omitted) (quoting *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017)).

Arellano argues that "the Government failed to present [to] the Jury this vital information" and claims that, as a result, his due process rights were violated. ECF No. 8 at 8-9. *Brady,* however, does not require the government to assist in presenting a defense. Even assuming that the government withheld the evidence at issue (which both the government

13

and the evidence dispute), Arellano has not shown that he was prejudiced by such alleged conduct. In short, he has not shown how the outcome of his trial would have been different had the allegedly withheld evidence been disclosed.

### B. Failure to Correct Perjured Testimony

Arellano alleges that the government coached Gardeazabel into providing false testimony at trial. ECF No. 2 at 15; ECF No. 8 at 10. Specifically, he claims that Gardeazabel falsely testified that (1) she saw him carrying a suitcase at the airport; (2) Arellano paid for an Uber from the airport to an unknown address; and (3) Arellano placed clothes inside of the suitcase in question; (4) Arellano purchased the car; (5) Arellano was in a Walmart; and (6) there was methamphetamine in the car at the time of Arellano's arrest. *Id.* He also complains that the government provided no evidence to corroborate Gardeazabel's testimony on these issues. *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits the government from knowingly using perjured testimony or allowing perjured testimony to go uncorrected. *Beltran v. Cockrell*, 294 F.3d 730, 735 (5th Cir. 2002) (citing *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000)). To obtain habeas relief on false testimony grounds, a movant must prove that: "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Id.* (citing *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997)); *see also Napue v. Illinois*, 360 U.S. 264 (1959). The deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice and violates due process. *Giglio v. United States*, 405 U.S. 150, 153 (1972), citing *Mooney v. Hologan*, 294 U.S. 103 (1935)); *Napue*, 360 U.S. at 269 (applying *Mooney* to testimony that bore upon a witness's credibility).

Assuming for the purposes of the Motion that Gardeazabel's testimony on these issues

14

was false, Arellano fails to provide evidence of the remaining two elements. Arellano merely alleges, again without factual support, that the information was false and the prosecution knew that the evidence was false. "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *See Pineda*, 988 F.2d at 23 (internal quotation omitted) (declining to consider vague ineffective assistance of counsel claim); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Further, he has not shown how he was prejudiced by the inclusion of such testimony. This issue is without merit.

Also meritless is Arellano's claim that he is entitled to relief because Gardeazabel's testimony was not corroborated and, therefore, was not credible. "Testimony is [not credible] as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *United States v. Age*, 136 F.4th 193, 219 (5th Cir. 2025) (quoting *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)). Gardeazabel's testimony does not reach the threshold of "incredible" since she had firsthand knowledge of Arellano's actions. In addition, the Court provided a special jury instruction on witness credibility, instructing the jury to weigh the testimony heard with "great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt." ECF No. 144 at 9. The jury is presumed to have followed its instructions in its deliberations. *See United States v. Cessa*, 785 F.3d 165, 183 (5th Cir. 2015) (citing *Zafiro v. United States*, 506 U.S. 534, 540 (1993)). Arellano has not shown that the jury failed to follow the instruction in convicting him. Arellano is not entitled to relief on these grounds.

### C. Deceiving the Court and Manipulating Evidence

Arellano alleges that the prosecutor "dec[e]ived the court into listening to the recorded interviews so she could conceal the manipulation by the police." ECF No. 2 at 14. He also alleges "misconduct of DEA and officers," whom he apparently believes manipulated, tampered with, and/or spoliated evidence. *Id.* at 5, 14. However, these conclusory allegations, devoid of factual and evidentiary support, are insufficient to state a viable claim for relief and are summarily denied.

For the reasons stated above, Petitioner's Motion to Vacate is **DENIED** with prejudice.

**SO ORDERED.**

December 31, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE